***NOT FOR PUBLICATION*** 

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>TIMOTHY WIMBUSH,<br><br>Defendant. | Criminal No. 19-134 (FLW)<br><br>**OPINION** |

**WOLFSON, Chief Judge:**

Before the Court is Defendant Timothy Wimbush's appeal of the Magistrate Judge's denial of his motion for release ("Appeal of the Detention Order"), pursuant to the Bail Reform Act, 18 U.S.C. § 3141 *et seq.* (ECF No. 571). In September 2018, Defendant was charged and arrested for various drug related offenses and possession of a firearm by a convicted felon in violation of 18 U.S.C. § 924 (c)(1)(A). Despite consenting to detention at his initial hearing, Defendant later, on April 14, 2020, filed a motion for release from custody, which was denied based on a finding that Defendant had failed to rebut the presumption of detention, and that no condition or combination of conditions of pretrial release could adequately ensure the safety of the community. Approximately seven months after his first application, Defendant filed a second motion for release from custody, arguing, in part, that his constitutional right to a speedy trial had been violated because the District of New Jersey's Third Amended Standing Order 2020-012, issued in response to the COVID-19 global health pandemic, had unfairly delayed his trial. Defendant now appeals the Magistrate Judge's denial of that second application for release. For reasons that follow, Defendant's Appeal of the Detention Order is **DENIED**.

I.  **BACKGROUND**

   A.  Factual Background and Procedural History

On September 6, 2018, law enforcement arrested Defendant in Trenton, New Jersey, after he was stopped in a vehicle, registered in his name, from which law enforcement recovered 57 bricks of heroin, four semiautomatic firearms (including a .223 caliber assault rifle that had been used in a prior shooting), and hundreds of rounds of ammunition.

On October 24, 2018, a criminal complaint charged Defendant with conspiracy to distribute one kilogram or more of heroin in violation of 21 U.S.C. § 846, possession with intent to distribute and/or distribution and possession with intent to distribute controlled dangerous substances in violation of 21 U.S.C. § 841, and possession of a firearm by a convicted felon in violation of 18 U.S.C. § 924 (c)(1)(A). (ECF No. 1.) The criminal complaint alleged that from October 2107 to October 2018, Defendant and twenty-five other individuals conspired to distribute and possess with the intent to distribute controlled substances, including at least one kilogram of heroin, in and around Trenton. In addition, the complaint alleged that an investigation conducted by law enforcement, which included court-authorized wiretaps, suggested that the participants in the conspiracy had possessed and shared firearms in furtherance of the drug-trafficking conspiracy. According to the complaint, law enforcement believed that a significant amount of the gun violence during the conspiracy occurred as a result of an ongoing dispute between individuals aligned with the defendants named in the complaint, including Defendant, and a rival Trenton gang.

As to Defendant, the complaint alleged that on the date of his arrest, officers conducting surveillance in Trenton observed a vehicle registered to Defendant parked on the street. The officers then observed an individual, later identified as co-defendant Taquan Williams, exit a nearby building carrying a plastic bag. Williams sat in the front passenger seat of the vehicle,

which then remained parked for two minutes. The officers conducted an investigatory stop of the vehicle and its four occupants, which included Defendant. During a subsequent search of the vehicle, law enforcement discovered a hidden compartment, which contained, among other things: (i) a .223 caliber semi-automatic assault rifle; (ii) a Glock 30 .45 caliber semi-automatic firearm; (iii) a Smith & Wesson .40 caliber semi-automatic firearm; (iv) a Glock 19 semi-automatic firearm; (v) dozens of rounds of ammunition of various caliber; and (vi) approximately fifty-seven bricks of suspected heroin.

Defendant was subsequently indicted on these charges in a Third Superseding Indictment. (ECF No. 452.)

Despite consenting to detention at his initial hearing on October 26, 2018,[1] Defendant filed a motion for release from custody ("First Motion for Release") on April 14, 2020. (ECF No. 478.) Following a hearing on April 20, 2020, the Magistrate Judge denied Defendant's First Motion for Release, based on a finding that Defendant had failed to rebut the presumption of detention and that no condition or combination of conditions of pretrial release could adequately ensure the safety of the community. (ECF No. 488.) Consequently, Defendant has been detained since his arrest, and he is currently housed in the Essex County Correctional Facility.

On November 10, 2020, Defendant again moved for release from custody ("Second Motion for Release") before the Magistrate Judge, arguing that despite being incarcerated for two years, he has been detained "in the midst of a global pandemic, with no trial date scheduled, or time frame for a trial anticipated." (ECF No. 555.)[2] In addition, Defendant provided letters from community

---

[1]  Defendant preserved his right to file for bail at a later time.
[2]  The Court notes that five Orders of Continuance have been entered in this case with the consent of Defendant and the Government, because the parties requested additional time to discuss a potential plea agreement, and that Defendant, with the assistance of counsel, required additional time to review discovery. Specifically, Orders of Continuance were entered on October 28, 2018;

members in an attempt to rebut the presumption of detention. According to Defendant, these letters were the product of personal relationships and included offers of supervision and employment. Defendant maintained that his aunt and grandmother were willing to serve as his third-party custodian, and that his mother, Shannell Wimbush, was willing to place her home as collateral for any bond granted by the court.

In a Memorandum Opinion and Order dated February 8, 2021, the Magistrate Judge denied Defendant's Second Application for Release. (ECF No. 570.) The Magistrate Judge found that Defendant's case was originally scheduled for trial in April 2020, but due to circumstances related to the global COVID-19 pandemic, no trial date is currently scheduled. While the Magistrate Judge appreciated the length of Defendant's detention, he also noted that "[t]he circumstances which have caused the delay of the trial of this case are not attributable to any party." (*Id.* at 2.) Rather, "the global health crisis has resulted in the postponement of all jury trials, criminal as well as civil, throughout the District and much of the country." (*Id.*) Further, after reviewing the allegations contained in the criminal complaint against Defendant, along with his criminal history, the Magistrate Judge concluded that Defendant's release would likely pose a danger to the community that could not be adequately mitigated by the imposition of any conditions to release. (*Id.*)

On March 8, 2021, Defendant filed the instant appeal of the Magistrate Judge's denial of his Second Motion for Release, and on March 22, 2021, the Government filed opposition. (ECF Nos. 571 and 576.)

---

January 11, 2019; May 1, 2019; June 25, 2019; and November 21, 2019. (*See*, *e.g.*, ECF Nos. 66, 248, 310, 333, and 405.)

B.    COVID-19 and Applicable Standing Orders

In light of the exigent circumstances brought on by the global COVID-19 pandemic and the emergencies declared by federal and state officials, on March 16, 2020, I, in my role as the Chief Judge, entered Standing Order 20-02. Standing Order 20-02, among other things, continued all criminal and civil jury trials through April 30, 2020, and excluded the time between March 16, 2020 and April 30, 2020 for purposes of computing time under the Speedy Trial Act. (Standing Order 20-02 ¶ 6, ECF No. 465.) Specifically, I found that the ends of justice served by such an exclusion of time outweighed the interests of the public and the parties in a speedy trial because an exclusion was necessary to provide "a full, unhindered, continuously serving jury" in every case and "to address the reasonably anticipated difficulties in defense counsel communicating or visiting with clients." (*Id.*) Pursuant to Standing Order 2020-09, I extended the continuances ordered by Standing Order 20-02 through May 31, 2020, and further ordered that the time period between March 16, 2020 and May 31, 2020 be deemed "excluded time" under the Speedy Trial Act. (Standing Order 20-09 ¶ 3, ECF No. 482.)

On May 22, 2020, I issued Standing Order 2020-12. Standing Order 2020-12 superseded Standing Orders 20-02, 20-03, 2020-04, and 2020-09 and further continued all civil and criminal jury selections and trials through August 31, 2020. (Standing Order 2020-12 ¶¶ 1-2, ECF No. 498.) Standing Order 2020-12 ordered that the time period between March 16, 2020 and August 31, 2020 be deemed "excluded time" under the Speedy Trial Act. (*Id.* at ¶ 3.) Specifically, I acknowledged the rights of criminal defendants, including their Sixth Amendment right to a speedy and public trial, but determined that due to the continuing public health and safety issues related to the COVID-19 pandemic, the ends of justice served by a continuance of jury trials and

an exclusion of time under the Speedy Trial Act outweighed the best interests of the public and the parties in a speedy trial. (*Id.*)

Standing Order 2020-12 has been extended four times, most recently on December 17, 2020 ("Third Extension") and March 11, 2021 (the "Fourth Extension"). Pursuant to the Fourth Extension of Standing Order 2020-12, all civil and criminal jury selections and trials are continued until June 1, 2021. (Fourth Extension ¶ 1, ECF No. 574.) I further ordered that the time period between March 16, 2020 and June 1, 2021 be deemed "excluded time" under the Speedy Trial Act. (*Id.* at ¶ 3.) As with the initial Standing Order 2020-12, I recognized the rights of criminal defendants to a speedy and public trial, but determined that, due to the compelling public health and safety issues related to the COVID-19 pandemic, the ends of justice served by such continuance materially outweighed the best interests of the public and the parties in a speedy trial. (*Id.*) In doing so, I expressly considered the relevant factors outlined in 18 U.S.C. § 3161(h)(7)(B) and found that "the failure to grant such continuance would likely make a continuation of proceedings impossible, or result in a miscarriage of justice" and that "[s]uch exclusion is necessary to assure that in cases going to trial, there is a full, unhindered, continuously serving jury venire and seated jury in every case, which is central to the sound administration of justice." (*Id.*)

Notably, each of these Standing Orders, as well as the extensions thereof, were filed on the docket in this case. Defendant has never moved for reconsideration of any Standing Orders, extensions thereof, or any other Order of Continuance entered by the Court.

II. **LEGAL STANDARD**

Under the Bail Reform Act, "[i]f a person is ordered detained by a magistrate judge ... the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). The district court reviews the

magistrate judge's detention order *de novo*. *United States v. Delker*, 757 F.2d 1390, 1394 (3d Cir. 1985). If the record was fully developed before the magistrate judge, "and the parties have not proffered any additional evidence which would materially alter the decision of the Magistrate Judge ... the [District] Court will rule on the record established before the Magistrate Judge." *United States v. Bastianelli*, No. 17-305, 2018 WL 1015269, at *4 (W.D. Pa. Feb. 22, 2018). The district court "is not required to hold a new evidentiary hearing." *United States v. Harry*, No. 19-246, 2020 WL 1933990, at *2 (D. N.J. April 22, 2020) (citation omitted); *see also United States v. Talbert*, No. 20-266, 2020 WL 6048788, at *3 (W.D. Pa. Oct. 13, 2020) ("[No] additional or independent evidentiary hearing [is required] by the district court, and the court may incorporate the transcript of the proceeding before the magistrate judge, including any admitted exhibits." (citation omitted)). "The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f)(2)(B).

A court "shall order the detention of a person" pending trial if the court determines that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e). Typically, the burden is on the government "to demonstrate by clear and convincing evidence that Defendant is a danger to the community and/or by a preponderance of the evidence that Defendant is a flight risk." *United States v. Oliver*, No. 16-40, 2016 WL 1746853, at *5 (W.D. Pa. May 3, 2016) (citing *United States v. Perry*, 788 F.2d 100, 115 (3d Cir. 1986)); *United States v. McIntyre*, No. 16–13, 2018 WL 385034, at *3 (D. N.J. Jan. 10, 2018). Thus, the government bears the ultimate burden of proving that there are no "conditions [of release that] will reasonably assure the appearance of

[Defendant] as required and the safety of any other person and the community[.]" *See* 18 U.S.C. § 3142(e).

In determining whether the government has met its burden, and thus whether detention is warranted, the court weighs the evidence in light of the four factors of Section 3142(g): (1) the nature and circumstances of the offense charged, including whether the offense is a "crime of violence"; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including his character; physical and mental condition; family; employment; finances; length of residence; ties to community; drug abuse history; criminal history; record of appearance at court proceedings; and whether he was on bond, probation, or parole at the time of the charged offense; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

## III. <u>ANALYSIS</u>

On appeal, Defendant argues that his "lengthy detention" without a trial constitutes a Fifth Amendment deprivation of due process and violates his Sixth and Eighth Amendment rights under the U.S. Constitution. Vaguely referencing "other district courts" that have conducted jury trials, Defendant argues that the U.S. Constitution does not contain a "pandemic exception" with respect to Defendant's right to a speedy trial. In addition, Defendant argues that he has overcome the presumption that he presents a danger to the community and that his prior criminal history, alone, is insufficient to support the conclusion that he would pose a danger to the community regardless of mitigation.

A. **Defendant's Detention Does Not Constitute a Constitutional Violation**

The Court disagrees that the delay caused by the COVID-19 pandemic, and the Standing Orders issued in response, have violated Defendant's rights under the U.S. Constitutiont.

At the outset, with respect to Defendant's argument pursuant to the Eighth Amendment, the Eighth Amendment "was designed to protect those convicted of crimes and consequently the [Cruel and Unusual Punishments] Clause applies only after the State has complied with constitutional guarantees traditionally associated with criminal prosecutions." *Hubbard v. Taylor*, 399 F.3d 150, 164 (3d Cir. 2005) (quoting *Whitley v. Albers*, 475 U.S. 312, 318 (1986) (citation and internal quotations omitted)). The Cruel and Unusual Punishments Clause, therefore, does not apply until "<u>after</u> sentence and conviction." *Hubbard*, 399 F.3d at 164 (emphasis added). "The only arguable substantive limitation of the [Eighth Amendment's] Bail Clause [on pretrial detention] is that the Government's proposed conditions of release or detention not be 'excessive' in light of the perceived evil." *United States v. Salerno*, 481 U.S. 739, 754 (1987). That argument, however, is not raised in this Appeal of the Detention Order. Rather, Defendant primarily takes issue with the <u>length of his detention without trial</u>, particularly the past eleven months of his detention, during which jury trials have been suspended pursuant to the Court's Third and Fourth Extensions of the Standing Order.

Defendant also argues that his continued detention violates his due process rights under the Fifth Amendment and his Sixth Amendment right to a speedy trial. With respect to Defendant's due process rights, the Third Circuit has explained that "while the detention of sentenced inmates is governed by the Eighth Amendment, the treatment of pretrial detainees is governed by the Due Process Clause." *Wharton v. Danberg*, 854 F.3d 234, 247 (3d Cir. 2017). "In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection

9

against deprivation of liberty without due process of law, . . . the proper inquiry is whether those conditions amount to punishment of the detainee. For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). To determine whether the challenged conditions of pre-trial confinement amount to punishment,

> [a] court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. Absent a showing of an expressed intent to punish on the part of the detention facility officials, that determination generally will turn on whether [it has] an alternative purpose ... and whether it appears excessive in relation to [that] purpose.... Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court may permissibly infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees.

*Wolfish*, 441 U.S. at 538–39 (citations, brackets and internal quotations omitted). Here, as demonstrated in more detail, *infra*, Defendant's continued detention serves two clear legitimate governmental objectives: (1) protecting potential jurors, court staff and personnel, and other individuals integral to the criminal trial process amid the COVID-19 pandemic and (2) ensuring the safety of the community in light of the circumstances surrounding Defendant's arrest and his criminal history. Thus, the Court does not find a violation of Defendant's Fifth Amendment due process.

Next, in determining whether a defendant's pretrial detention violates his right to a speedy trial under the Sixth Amendment, courts employ a four-factor test. "The inquiry focuses on: (1) the length of the delay before trial; (2) the reason for the delay and, specifically, whether the government or the defendant is more to blame; (3) the extent to which the defendant asserted his

10

speedy trial right; and (4) the prejudice suffered by the defendant." U*nited States v. Velazquez*, 749 F.3d 161, 174 (3d Cir. 2014) (citing B*arker v. Wingo*, 407 U.S. 514, 530–31 (1972)). "None of these factors is 'either a necessary or sufficient condition,' and the factors 'must be considered together with such other circumstances as may be relevant.'" *United States v. Battis*, 589 F.3d 673, 678 (3d Cir. 2009) (quoting *Barker*, 407 U.S. at 533). *See also Hakeem v. Beyer*, 990 F.2d 750, 759 (3d Cir. 1993) ("no one factor is dispositive nor 'talismanic.'")

Here, Defendant has been detained for approximately thirty months at the time of this application, and therefore, the first *Barker* factor has been met. *Battis*, 589 F.3d at 678 ("We have previously held that a delay of even fourteen months is sufficient to trigger review of the remaining *Barker* factors."). Additionally, it is undisputed that Defendant has timely asserted his speedy trial rights. As for the reason for the delay, Defendant objects only to the eleven-month period of delay attributable to the Court's Standing Orders entered in response to the COVID-19 pandemic. However, Defendant cites no case from any district in the country, where a court has found that a judicial standing order, or similar directive, flowing from the COVID-19 health crisis has violated a defendant's right to a speedy trial.[3]

---

[3] Defendant cites only *Berean Baptist Church v. Cooper*, 460 F. Supp. 3d 651 (E.D.N.C. 2020) and *Carson v. Simon*, 978 F.3d 1051 (8th Cir. 2020) in support of his argument that the Standing Orders violate his constitutional rights. Neither of these cases, however, relate to criminal jury trials. Rather, in *Cooper*, the court found that the Governor of North Carolina's Executive Order requiring that all worship services involving ten people or more must be held outdoors unless impossible violated the Free Exercise Clause of the First Amendment. *Cooper*, 460 F. Supp. 3d at 664-65. In *Simon*, the circuit court found that a consent decree extending the deadline to count absentee ballots in Minnesota for the 2020 presidential election likely violates Article II, Section 1 of the U.S. Constitution because the Minnesota Secretary of State extended the deadline for receipt of ballots without legislative authorization. As referenced by Defendant, the circuit court reasoned, in part, that no "pandemic exception" exists in the U.S. Constitution. *Simon*, 978 F.3d at 1060. Notably, however, with the exception of the two cases referenced herein, *infra*, from the Central District of California and the Eastern District of California, courts around the country have overwhelmingly, if not almost uniformly, found that these pandemic-related standing orders, which continue criminal jury trials to promote and ensure the public health, do

Conducting its own independent research, the Court acknowledges two decisions, one from the Central District of California and the other from the Eastern District of California, that found, in part, continuances resulting from the COVID-19 pandemic did not satisfy the "ends of justice" exception to the Speedy Trial Act. *See United States v. Olsen*, 494 F.Supp.3d 722, 728- 732 (C.D. Cal. 2020); *United States v. Sheikh*, 493 F. Supp. 3d 883, 889 (E.D. Cal. 2020).[4] Notably, however, the Ninth Circuit recently reversed the district court's decision in *Olsen*, finding that the trial court's dismissal of the indictment with prejudice was an abuse of discretion. *United States v. Olsen*, No. 20-50329, 2021 WL 1589359, at *9 (9th Cir. Apr. 23, 2021). Specifically, the Ninth Circuit found that the district court incorrectly focused on the word "impossible" in 18 U.S.C. § 3161(h)(7)(B)(i), and therefore, overlooked the rest of the provision, which requires courts to ask whether the district court's failure to apply an ends of justice continuance "would ... result in a miscarriage of justice." *Id.* at *6. As explained by the circuit court, while "the right to a speedy and public jury trial provided by the Sixth Amendment is among the most important protections

---

not violate a defendant's constitutional rights. *See, e.g.*, *United States v. Carrillo*, No. 19-1991, 2020 WL 6707834, at *3 (D.N.M. Nov. 16, 2020); *United States v. Aguerre*, No. 19-75, 2020 WL 6487776, at *4 (D. Utah Nov. 4, 2020); *United States v. Reese*, No. 19-149, 2020 WL 5097041, at *3–4 (D. Minn. Aug. 28, 2020); *United States v. Kane*, No. 20-5054, 2020 WL 6434792, at *4–5 (W.D. Wash. June 9, 2020); *United States v. Smith*, 460 F. Supp. 3d 981, 988 (E.D. Cal. 2020); *United States v. Taylor*, No. 18-198, 2020 WL 7264070, at *1 (D.D.C. Dec. 10, 2020); *United States v. McRae*, No. 119-125, 2021 WL 359258, at *4 (S.D. Ga. Jan. 19, 2021), *report and recommendation adopted*, No. 119-125, 2021 WL 354423 (S.D. Ga. Feb. 2, 2021); U*nited States v. Akhavan*, No. 20-188, 2021 WL 797806, at *3 (S.D.N.Y. Mar. 1, 2021).

[4]    The court's decision in *Sheikh* is distinguishable from this case. In granting the defendant's motion to dismiss the indictment against him under the Speedy Trial Act, the court reasoned that but for the government's late disclosure of material required to be provided under *Brady v. Maryland*, 373 U.S. 83 (1963), the defendant's case would have been tried prior to the court's shutdown in March 2020. *Sheikh*, 493 F. Supp. 3d at 888. This is not the case, here. Defendant has not suggested any delay on the part of the Government, nor can delay be inferred from the case's procedural history. In fact, as the Court noted, five Orders of Continuance have been entered in this case -- each with the consent of Defendant the last of which expired right before the COVID-related Standing Orders were issued.

guaranteed by our Constitution[,]" "[t]he Central District of California did not cast aside the Sixth Amendment when it entered its emergency orders suspending jury trials based on unprecedented public health and safety concerns." *Id.* at *9. To the contrary, the emergency orders, "which acknowledge the importance of the right to a speedy and public trial both to criminal defendants and the broader public," conclude that, "considering the continued public health and safety issues posed by COVID-19, proceeding with such trials would risk the health and safety of those involved, including prospective jurors, defendants, attorneys, and court personnel." *Id.*

Additionally, the decision in *United States v. Chu*, No. 19-0678, 2021 WL 879905, at *5 (D.N.J. Mar. 9, 2021), underscores the important public health considerations that resulted in the District of New Jersey's Standing Orders. As explained by the court in *Chu*, the "Standing Orders acknowledge the grave importance of the right to a speedy and public trial both to criminal defendants and the broader public, but conclude that, in light of the continued public health and safety issues posed by COVID-19, proceeding with such trials would not only risk the health and safety of those involved, including court personnel, defendants, counsel, and the jurors, but would pose an unacceptable risk to the integrity of the jury selection process and the trial itself." *Id.* Indeed, in deciding to continue all jury trials through June 1, 2021, the Standing Orders took into account the various national, state, and public health emergencies declared in response to the COVID-19 pandemic, some of which remain in effect, as well as guidance and information provided by state and federal health officials emphasizing the importance of limiting indoor gatherings of people and maintaining appropriate social distancing. Moreover, the jury selection process, as well as the criminal trial process more generally, require the participation and circulation of large groups of people, consisting of individuals either in high risk populations or responsible for caring for someone who may be at greater risk of severe illness due to COVID-19.

Lastly, in looking at the jury process more specifically, the Standing Orders accounted for the strain that such an obligation would pose on those employed in essential public functions or those who face substantial childcare challenges in the wake of continued school closures amid the pandemic. *See* Fourth Extension at 1-2. To be sure, "the decision to continue jury trials and exclude time under the Speedy Trial Act is not one that has been made lightly." *Chu*, No. 19-0678, 2021 WL 879905, at *5. Accordingly, the reason for the delay is to ensure public health.

Finally, Defendant fails to provide evidence of actual prejudice resulting from the recent eleven-month delay. There are "three types of harm that arise from unreasonable delay between formal accusation and trial:" (1) "oppressive pretrial incarceration;" (2) "anxiety and concern of the accused;" and (3) "the possibility that the [accused's] defense will be impaired by dimming memories and loss of exculpatory evidence." *United States v. Claxton*, 766 F.3d 280, 296 (3d Cir. 2014) (quoting *Doggett v. United States*, 505 U.S. 647, 654 (1992)). In this regard, Defendant submits that his detention is creating "mental damage," that his movement is restricted outside of the standard pretrial detention to avoid the spread of COVID-19 within the jail, and that he has "discovered a growing lump on his body," which has not been tested or evaluated. Conditions of pretrial detention become oppressive when "the treatment of the accused . . . fall[s] below established, standard levels, so as to place the physical or mental integrity of the accused in jeopardy." *Wells v. Petsock*, 941 F.2d 253, 257 (3d Cir. 1991). In applying this standard, the Third Circuit has required the detainee to "demonstrate[] that the conditions of his pretrial incarceration were extraordinary or fell below standard levels." *Id.* at 258. Here, the reasonable restrictions on inmate movement to reduce the risk of COVID-19 spread within Defendant's jail do not rise to the level of oppressiveness. As to Defendant's claimed medical condition or perceived abnormality, Defendant does not provide any evidence that the jail is denying him care or that the medical

resources available to him while detained are inadequate. Accordingly, the Court does not find any unjustified delay in bringing Defendant's case to trial.

### B. Presumption of Danger to the Community

Next, the Court finds that Defendant has failed to overcome a presumption of detention. In this case, as Defendant concedes, there is a statutory presumption that no condition or combination of conditions will reasonably assure the appearance of Defendant and the safety of the community. The presumption in favor of detention applies, pursuant to 18 U.S.C. § 3142(e)(3)(A), because a Grand Jury has found probable cause to believe that Defendant committed offenses prescribed in the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, for which the maximum term of imprisonment is ten years or more. *See United States v. Suppa*, 799 F.2d 115, 119 (3d Cir. 1986) ("indictment is sufficient to support a finding of probable cause triggering the rebuttable presumption of dangerousness under § 3142(e)").[5] In order to rebut the presumption in favor of detention, Defendant must introduce "some credible evidence forming a basis for his contention that he will appear and will not pose a threat to the community." *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986). If the defendant meets this burden of production, the burden shifts back to the government to prove a risk of flight by a preponderance of the evidence, *United States v. Himler*, 797 F.2d 156, 161 (3d Cir. 1986), and dangerousness to the community by clear and convincing evidence, 18 U.S.C. § 3142(f).

Here, the Court finds that Defendant's mere submission of letters from family and friends, as well as his attempt to compare his circumstances with co-defendant Omar Council,[6] is

---

[5] The presumption in favor of detention also applies in this case, pursuant to 18 U.S.C. § 3142(e)(3)(B), because Defendant has been indicted for an offense under Section 924(c) for possession of four firearms in furtherance of the drug trafficking offenses with which he is charged.
[6] Defendant highlights that Council was released from custody with the consent of the Government and now only has "the minor restriction of curfew." These comparisons are inapt,

15

insufficient to overcome the presumption of detention. In that regard, I agree with the Magistrate Judge. Although the letters of support are genuine, well intentioned, and informative, they do not assuage the serious criminal conduct with which Defendant is charged, the strength of the evidence presented in support of those charges, and Defendant's criminal history. Rather, while Defendant is presumed innocent of the charges against him, the Court is particularly troubled by the alleged factual circumstances underlying his arrest and the Third Superseding Indictment. Defendant was arrested by law enforcement while driving a vehicle, which was registered in his name, that contained a "trap compartment" for the sole purpose of storing and concealing contraband. The subsequent search of the vehicle and the secret compartment uncovered not only a substantial quantity of heroin, but several semi-automatic firearms and hundreds of rounds of ammunition. Indeed, at least one of the weapons recovered by law enforcement during their search was an unserialized, semi-automatic .223 caliber assault rifle. Moreover, while I agree with Defendant that his criminal history is not overwhelming, it does include two felony drug convictions and a third felony conviction related to an assault on a police officer, and therefore, Defendant's criminal history does not weigh in favor of bail. Therefore, without even considering the Government's representation that ballistics testing has confirmed that one of the weapons recovered from Defendant's vehicle was used in a shooting incident several days prior to Defendant's arrest,[7] the

---

however, because, unlike Defendant, Council has not been charged with, and has no history of, violent or firearms-based offenses.

[7]  According to the Government, ballistics testing has confirmed that the assault rifle found in Defendant's car was used in a September 2, 2018 shooting. While Defendant has not been charged in connection with the shooting, the Government maintains that police radio transmissions moments after the shooting discussed witnesses having identified a vehicle consistent with Defendant's green 2002 Volkswagen Passat speeding away from the scene -- the same vehicle that Defendant was operating when he was arrested on September 6, 2018.

Court finds that the underlying circumstances of his arrest demonstrate that Defendant poses a threat to the community.

IV. **CONCLUSION**

For the reasons set forth above, Defendant Timothy Wimbush's Appeal of the Detention Order is **DENIED**.

Dated: May 6, 2021
/s/ Freda L. Wolfson
Freda L. Wolfson
U.S. Chief District Judge